Kathy A. NELSON, Appellant,

v.

Albert HENNING and Fairfax Asphalt, Inc., Respondents.

No. C1–83–1902.

Court of Appeals of Minnesota.

Aug. 14, 1984.

Review Denied Nov. 8, 1984.

Dennis D. O'Brien, Duluth, for appellant.

Robert D. Brownson, Lasley, Gaughan, Stich & Angell, P.A., Minneapolis, for respondents.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and RANDALL, JJ.

## OPINION

FOLEY, Judge.

Plaintiff appeals from the trial court's denial of her motions for judgment notwithstanding the verdict or for a new trial after an adverse special verdict in favor of defendants, Fairfax Asphalt, Inc. and its employee-driver Albert Henning, in her negligence suit for injuries suffered when she was a passenger in a vehicle struck from the rear by defendant's dump truck. We reverse.

### FACTS

Plaintiff, Kathy A. Nelson, was severely injured when the car in which she was a passenger was struck in the rear by a fully loaded dump truck driven by defendant Albert Henning and owned by defendant Fairfax Asphalt, Inc. (Fairfax). The accident occurred on Saturday, June 2, 1979, in the southbound right lane of interstate 35W where it crosses the Minnesota River south of Minneapolis.

Plaintiff was riding in the right side of the back seat of a Plymouth Duster owned and driven by Rev. Jerry Hunt, her brother-in-law. She was one of four passengers traveling to Valley Fair amusement park on a sunny, dry day. Traffic was moderate to heavy.

Approximately three-quarters of a mile north of the bridge crossing the Minnesota River, southbound 35W becomes a long straightaway, descending to the bridge below.

Rev. Hunt saw stalled traffic on the bridge below as he entered this stretch of road. He took his foot off the accelerator and gradually applied his brakes as he prepared to stop behind the stalled traffic in the right lane.

At about the same time, defendant Albert Henning, was driving a fully loaded tandem axel dump truck, owned by defendant Fairfax Asphalt, Inc., in the left lane of southbound 35W at 45–50 m.p.h. Concededly, Henning was driving the truck in the course and scope of his employment.

As Henning cleared the crest of the hill above the bridge, he observed the stalled traffic ahead of him. Henning immediately hit the brake pedal. It held momentarily and then went to the floor. Henning testified that he next attempted to steer the truck into the right lane so that he could exit the freeway but was unable to do so because of heavy traffic in that lane. He tried the emergency brake, which he had installed the day before, but it only slightly slowed the truck. Henning testified that the emergency brake was only a "parking" brake and therefore was not capable of stopping the truck. He stated that he tried

to downshift to reduce his speed but was only successful in shifting down a couple of gears. By the time Henning got the truck over into the right lane, he was on the river bridge which had no shoulder. Henning did not remember sounding his horn.

The truck struck the right rear bumper of the Duster at a speed of about 30 m.p.h. The Duster was traveling about 10–15 m.p.h. and was close to stopping when, without warning, its occupants felt "an explosion." The windows in the Duster blew as the dump truck pushed the Duster forward into several other cars. As the truck tipped onto its right side and the Duster onto its left side, the Duster was flattened and its undercarriage became ensnarled with that of the dump truck.

Plaintiff was the only accident victim with serious injuries. She suffered a fractured pelvis and a dislocated left sacroiliac joint. As a result, she has a 20% permanent partial disability to her lumbar spine, including permanent damage to her sacroiliac joint, a shortened left leg, curvature of the spine, a predisposition to arthritis in the pelvic area, permanently misshapen hips and a susceptibility to chronic aches and pains in her pelvic area.

The truck driven by Henning was owned by his employer, defendant Fairfax Asphalt, Inc. The truck was five years old and had in excess of a quarter of a million miles on it at the time of the accident. Fairfax had recently purchased the truck in an "as is" condition, knowing that approximately 60,000 miles had been put on the truck the previous season and that it had not undergone an end-of-season overhaul before it was sold.

Before putting the truck into use, Fairfax had another company replace the engine and a worn-out hydrovac ("a power brake booster"), and adjust the brake shoes. Defendant Henning, a 20-year mechanic, replaced the emergency brake shoe pads and inspected the brake shoe linings. None of this servicing involved disassembly of the wheel or a visual inspection of the brake wheel cylinder.

Officer Geiger, (qualified by plaintiff as an expert mechanic), inspected the truck brakes at the scene of the accident. He determined that a sudden rupture in the brake cylinder in the right front wheel caused the brakes in the truck to fail. Although the defendants admitted they could not produce the brake wheel cylinder for his inspection, Geiger opined, without objection, that the cylinder failed because it was worn out.

Geiger further testified, without objection, that an adequate emergency brake would have been capable of controlling and stopping a truck like defendant's, which was traveling 45 to 50 miles per hour before the Minnesota River Bridge, if applied in the vicinity of the 106th Street knoll.

An accident reconstructionist, Myron Lofgren, testified that the driver had two reasonable and safe alternative measures available to him after his brakes failed: (1) downshift to a stop; or (2) drive into the gentle sloping ditch on the right side of the road during the first three-tenths of a mile.

At trial, the jury was instructed on a number of negligence claims. This appeal is limited to a review of plaintiff's claim that defendant Fairfax failed to equip its truck with brakes as required by law in that the alternative braking system, the emergency braking system, was not capable of controlling the movement of and stopping the truck.

Following trial, plaintiff moved for a directed verdict on the issue of defendant Fairfax's failure to have the motor vehicle equipped with an adequate emergency brake system in violation of Minnesota law. The motion was denied.

The jury returned a special verdict finding Albert Henning and Fairfax Asphalt, Inc. not negligent. Kathy A. Nelson's medical expenses were assessed at $6,694.80, her wage loss at $742.40, and damages for pain, suffering, and disability were assessed at $62,000.

Plaintiff moved for judgment notwithstanding the verdict in her favor on the negligence of defendant Fairfax in its fail-

ure to have its truck equipped with an emergency brake adequate to control the movement of and to stop the vehicle at the time of the accident. In the alternative, plaintiff moved for a new trial on grounds that the verdict is not justified by the evidence and is contrary to law.

The trial court denied these motions and plaintiff appealed to this court.

## ISSUES

1. Is defendant Fairfax negligent as a matter of law where it admitted its truck, which rear-ended plaintiff's vehicle, had as its alternate braking system an emergency brake which was not capable of stopping and controlling the truck as required by Minnesota law?

2. Did the trial court commit reversible error by (a) giving instructions on the emergency doctrine where the defendant created the emergency, and (b) by misreading the adequate brake statute?

3. Was the assessment of damages so inadequate that it could only have been made on account of jury prejudice or compromise between right of recovery and amount of damages?

## ANALYSIS

*1. Negligence as a matter of law?*

 Plaintiff sought a directed verdict following trial based on her claim that defendant Fairfax admitted violation of the adequate brake statute, Minn.Stat. § 169.-67, subd. 1 (1978). She also sought judgment notwithstanding the verdict following the jury's special verdict. Both motions were denied.

*directed verdict standard:*

"[T]he court should direct a verdict in favor of a party in whose favor the evidence overwhelmingly preponderates, though there is some evidence in favor of the adverse party." *Reiter v. Porter,* 216 Minn. 479, 483–84, 13 N.W.2d 372, 375 (1944). A motion for a directed verdict "accepts the view of the *entire* evidence most favorable to the adverse party and

admits the credibility (except in extreme cases) of the evidence in his favor and all reasonable inferences to be drawn therefrom." *Hanson v. Homeland Ins. Co. of Am.,* 232 Minn. 403, 404–05, 45 N.W.2d 637, 638 (1951).

*evaluation of the evidence:*

The trial court denied plaintiff's motion for a directed verdict even though it acknowledged:

It is unquestionably true that the defendant's testimony is that the emergency brake was not in compliance apparently with statutory requirements and, further, that it might have done little good in slowing down the vehicle but certainly wasn't effective to bring it to a stop.

Defendant Henning, Fairfax's employee, admitted that the emergency brake which he had installed, was only a parking brake and not expected or intended to stop the vehicle.

*adequate brake statute:*

Minn.Stat. § 169.67, subd. 1 (1978) requires:

Every motor vehicle, other than a motorcycle, when operated upon a highway, shall be equipped with brakes adequate to control the movement of and to stop and hold such vehicle, including two separate means of applying the brakes, each of which means shall be effective to apply the brakes to at least two wheels. If these two separate means of applying the brakes are connected in any way, they shall be so constructed that failure of any one part of the operating mechanism shall not leave the motor vehicle without brakes on at least two wheels.

*prima facie negligence:*

Violation of this statute by a party in a civil action "shall be prima facie evidence of negligence." Minn.Stat. § 169.96 (1978). Once a prima facie case is established because of a violation of the brake statute, the burden shifts, requiring the one who violated the statute to show "statutory or

other reasonable excuse for the violation." *Tomforde v. Newman*, 309 Minn. 254, 244 N.W.2d 47, 49 (1976).

Here, defendant had no excuse or justification for the inadequate emergency brake. In a similar case, *Lee v. Zaske*, 213 Minn. 244, 6 N.W.2d 793 (1942), the Minnesota Supreme Court held that defendant was negligent as a matter of law where defendant had violated the brake statute, produced no evidence to rebut this prima facie evidence of negligence, and the evidence compelled a finding that his negligence in driving at a high speed with defective brakes caused plaintiff's death.

Defendant cites a number of cases to support its position that this case presented a jury question. These cases can be distinguished. In *Trudeau v. Sina Contracting Co.*, 241 Minn. 79, 62 N.W.2d 492 (1954), *Minder v. Peterson*, 254 Minn. 82, 93 N.W.2d 699 (1958), and *Gave v. Pyrofax Gas Corp.*, 274 Minn. 210, 143 N.W.2d 242 (1966), the Minnesota Supreme Court held that the question of defendant's negligence could not be resolved as a matter of law since there was evidence in each case that the defendant did not know of the brake defect prior to the accident. *Gave*, at 213–14, 143 N.W.2d at 245.

The Minnesota Supreme Court distinguishes *Lee*, the controlling case here, from the cases cited by defendants:

> In *Lee v. Zaske*, ... the accident was also caused by brake failure. In that case the *defendant admitted* in his testimony that *he had known* prior to the accident that *the brakes did not work properly.* We held that under those circumstances the emergency doctrine was not applicable because the defendant had caused his own situation of peril and the *defendant was negligent as a matter of law because of his violation without excuse of the statute requiring the maintenance of adequate brakes.*

*Gave* at 213, 143 N.W.2d at 245 (emphasis added).

Defendant also argues that *Trudeau* should control the instant case because in *Trudeau* the driver was absolved of liability even though he did not attempt to use the emergency brake once his foot brake failed. In *Trudeau*, the driver testified that he believed it would have taken him 150 feet to stop the truck with the emergency brake and his foot brake failed about 105–110 feet from the intersection where the collision occurred.

Here, defendant Henning had ¾ to ½ mile and about 21 and one-half seconds before the point of impact, sufficient time and distance to have stopped the truck with an adequate emergency brake.

■ There is no issue of proximate cause here where plaintiff is without fault and it is clear that defendant's failure to have an alternate system of braking, as required by law, caused the accident which resulted in plaintiff's injuries.

*summary:*

The trial court should have directed a verdict for plaintiff based on defendant's admission that the emergency brake on its truck did not comply with the statutory requirements. When the trial court elected to submit this issue to the jury and the jury found defendants not negligent, the court should have granted plaintiff's motion for judgment notwithstanding the verdict against defendant Fairfax on this issue. "If a party is entitled to a directed verdict at the trial, he is entitled to judgment non obstante, unless there is reasonable probability of the adverse party being able to make out a good cause of action or defense on another trial." *Reiter*, 216 Minn. at 483, 13 N.W.2d at 375.

*2. Court's error in instructing jury:*

■ We note that despite defendant's admission that the truck which injured plaintiff was not equipped with an adequate second braking system, the jury found defendants not negligent. In reviewing a special jury verdict: "The test is whether the answers can be reconciled in any reasonable manner consistent with the evidence and its fair preponderance." *Reese v. Henke*, 277 Minn. 151, 155, 152

N.W.2d 63, 66 (1967). *See also Hauenstein v. Loctite Corp.*, 347 N.W.2d 272 (Minn.1984).

The evidence clearly demonstrates defendant is negligent as a matter of law. Defendant's employee, defendant Henning, admitted that the truck was knowingly driven with an inadequate emergency brake. Since we find that the jury verdict is wholly inconsistent with the evidence, we are compelled to comment on two crucial errors of fundamental law made in the giving of the court's instructions, even though there was no objection to these instructions. *See* Rule 103.04, Minn.R.Civ. App.Pro. The trial court erred in instructing the jury on the emergency doctrine, and it erred when it misread the adequate brake statute to the jury.

### a. emergency doctrine:

The court must have believed defendants' argument that they were entitled to an instruction on the emergency doctrine because of the sudden failure of the first set of brakes. This argument has no basis. in law or logic when applied to the facts of this case.

■ The emergency doctrine is not appropriate here because the defendant created its own situation of peril by knowingly failing to equip its vehicle with an effective emergency brake. *See Lee*, 213 Minn. at 249, 6 N.W.2d at 796. After Henning applied the foot brakes and they failed, he immediately pulled the emergency brake. Officer Geiger testified that at that point, Henning had more than enough distance available to stop the truck with an *adequate* emergency brake. Minn.Stat. § 169.67 requires two systems of braking adequate to control and stop a vehicle. Henning knew the truck would not stop with the use of the emergency brake, a brake he considered a "parking brake" which was meant to only prevent the truck from rolling when stopped. Giving the instruction on the emergency doctrine could only have aided the defendant who created the emergency. This resulted in an erroneous verdict compelling reversal.

### b. misreading of adequate brake statute:

The jury's special verdict may also be attributed to the trial court's misreading of the brake statute. This statute, Minn.Stat. § 169.67, subd. 1, was misread to the jury as follows:

> Every motor vehicle *other than a motor vehicle when operated upon a highway* shall be equipped with brakes adequate to control the movement of and to stop and to hold such vehicle including two separate means of applying the brakes, each of which means shall be effective to apply the brakes to at least two wheels....

The statute states, "other than a *motorcycle* when operated upon a highway." Minn.Stat. § 169.67, subd. 1.

■ We note that the plaintiff has already suffered the expense of two trials, in part because at the conclusion of the first trial the court denied her request for an instruction based on Minn.Stat. § 169.67, subd. 1, the adequate brake statute. Here a misreading of this statute, a violation of which constitutes prima facie negligence, again constitutes prejudicial error. However, since we find defendant Fairfax negligent as a matter of law, a third trial is not required.

### 3. Damages:

■ The jury awarded plaintiff the stipulated amounts for loss of wages and medical expenses, then awarded $62,000 in general damages for plaintiff's pain and suffering. Plaintiff claims this award is wholly inadequate.

Plaintiff's testimony and her sister's testimony indicate she suffered severe pain and suffering immediately following the accident and during her recovery period. She spent about 30 days in the hospital, most of it in a pelvic sling. Approximately one month of physical therapy, consisting of several hour sessions about twice a day, helped her regain her mobility. She was

not allowed to participate in gym or sport activities during the next eight months.

Plaintiff was 16-years old at the time of the accident (1979). Although she previously engaged in hard physical labor on the family farm, plaintiff testified that she lacked the physical endurance she had before the accident. She cannot ice skate very long without tiring, play softball as she previously could, she tires and becomes sore when sitting more than one hour, can't wear high heels because she experiences sharp pain in her lower back when she does, fitted clothes do not fit her properly because her left hip is higher, she doesn't tolerate standing for long periods, and she has arthritic symptoms. At trial she was 20 years old, had completed a two-year college degree and was working as a cashier. She was unsure of her future plans but did not intend to make a career of her cashier job.

The jury found plaintiff's damages for pain and suffering, and permanent disability to be $62,000. In addition, the jury found her medical expenses and lost wages to be in the amounts stipulated, $6,694.80 and $742.40, respectively.

The jury was in the best position to evaluate the evidence of plaintiff's pain, suffering, injuries, and losses. "There is no fixed standard by which loss for injuries can be determined. Naturally the minds of reasonable men differ widely upon such a proposition." *Backman v. Fitch*, 272 Minn. 143, 153, 137 N.W.2d 574, 581 (1965). The award for pain and suffering, and permanent disability is within the range as to the amount that a jury might return. We note that a total award of $85,000 was returned by a jury in the first trial of this case.

After reviewing the evidence we are unable to say that the assessed damages are so inadequate as to be based on the jury's prejudice or compromise between the right of recovery and the amount of damages sustained.

## DECISION

1. Defendant Fairfax is liable as a matter of law for the injuries it caused plaintiff in a rear-end collision where it knowingly failed to equip its truck with two systems of braking, in violation of law, and the accident injuring plaintiff would not have happened if the truck had an adequate emergency brake.

2. Although we also note prejudicial error occurred in the court's instructions, a new trial is not required since we find defendant Fairfax negligent as a matter of law.

3. The damages awarded here by the jury, which was in the best position to evaluate the evidence of plaintiff's pain and suffering, and permanent injuries, are not so inadequate as to require a new trial on that issue.

Reversed and remanded with directions to enter a money judgment for plaintiff against defendant Fairfax Asphalt, Inc. in the total sum of $69,437.20 with interest thereon from the date of the special verdict, May 26, 1983.